Case 1:20-cv-03168-GLR   Document 1   Filed 10/30/20   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ELEMENT VEHICLE MANAGEMENT**
**SERVICES GROUP, LLC**
940 Ridgebrook Road
Sparks, Maryland 21152
(Baltimore County)

    **Plaintiff**

v.                                                                        Case No. 1:20-cv-3168

**THE SHYFT GROUP USA, INC.**
41280 Bridge Street
Novi, Michigan 48375

    **Defendant**
_____/

## COMPLAINT

Plaintiff Element Vehicle Management Services Group, LLC ("Element") files this Complaint for Breach of Contract against Defendant The Shyft Group USA, Inc. ("Shyft").

### The Parties

1. Element is a Maryland limited liability company that maintains its headquarters in Sparks, Maryland. Its sole member is a Delaware corporation, which has its headquarters and principal place of business in Maryland. Element and its affiliated entities are a global leader in the vehicle fleet management industry. They provide clients with comprehensive fleet management services, including acquisition and financing, program management, and vehicle remarketing. They serve over 5,500 clients worldwide.

2. Shyft is a South Dakota corporation that has its principal place of business and headquarters in Novi, Michigan. Shyft engages in specialty vehicle manufacturing, assembly, and upfitting for commercial and recreational vehicles. Shyft is the current name of the corporation

formerly known as Spartan Motors USA, Inc. ("Spartan").  Spartan changed its name to Shyft and underwent a corporate transformation and rebranding in or around April and May 2020.  Shyft currently does business under numerous brands and is registered to do business as a foreign corporation in Maryland.

## Jurisdiction and Venue

3. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. The Court has personal jurisdiction over Shyft because: (a) Shyft transacted the business at issue in this case in Maryland, performed work and services at issue in this case in Maryland, and contracted to supply goods and services at issue in this case in Maryland; (b) Shyft purposefully availed itself of the privilege of conducting activities in Maryland by registering to and regularly doing business in Maryland and directing activities at Element and others in Maryland; (c) Element's claims arise out of the activities that Shyft directed at Element and others in Maryland; and (d) the exercise of personal jurisdiction is constitutionally reasonable.

5. Venue is proper in this court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this case occurred in this judicial district.

## The Facts

### A.     The Upfitting Supplier Agreement

6. On June 1, 2017, Element and its elected affiliates and Spartan and its elected affiliates entered into an Upfitting Supplier Agreement (the "Agreement").  A copy of the Agreement is attached as Exhibit 1 to this Complaint.

7. In or around April and May 2020, Spartan changed its name to Shyft. For ease of reference, this Complaint will hereafter refer to the contracting parties as Element and Shyft.

8. Pursuant to the terms of the Agreement, Shyft became a participant in Element's Preferred Upfitting Network. (Agreement ¶ A.)

9. The term "upfitting" refers to the addition of equipment or features to a vehicle that were not installed by the vehicle manufacturer. Upfitting may include, for example, the addition of shelving, ladder racks, work platforms, secure storage units, specialized lighting, laptop mounts, or even refrigeration to a company's vehicles.

10. Element's Preferred Upfitting Network is a select group of upfitters with which Element has elected to do business. The business relationship between Element and the members of its Preferred Upfitting Network usually includes designated relationship managers and agreements detailing the type and quality of work expected for Element's customers. Element typically shares the companies within its Preferred Upfitting Network with clients and potential clients when making recommendations regarding which upfitting company its clients or prospective clients should use. Because Element has thousands of clients, membership in Element's Preferred Upfitting Network provides upfitters with increased business opportunities and exposure.

11. In exchange for Shyft's participation in Element's Preferred Upfitting Network, Shyft agreed to pay Element certain reimbursements based on the amount of money Element paid Shyft for upfitting work during the effective term of the Agreement. Specifically, Shyft had to "comply with the volume discount reimbursement provisions set forth in Appendix A" to the Agreement. (Agreement ¶ A.)

12. Appendix A to the Agreement provides:

3

>Supplier agrees to provide Element with a quarterly volume discount reimbursement in the amount of 3% of the total invoiced cost from Element's purchases. Reimbursements will be paid within 30 days of the close of the calendar quarter. Supplier also agrees to provide an additional 1% volume discount reimbursement to Element for purchases from new end-user entities. A new end-user is one that Supplier did not previously transact with in the prior 24 calendar months. A late charge in the amount of one and one-half percent (1-1/2%) per month or fraction thereof shall be imposed for all payments not received on or before the date such payments are due.

13. By its terms, the Agreement was effective as of June 1, 2017 and remained in "full force and effect until terminated." (Agreement ¶ I.) The Agreement further provided that either party could terminate it upon 90 days' written notice to the other party. (*Id.*) However, certain provisions of the Agreement remained in effect after termination, including "all unpaid fees and expenses payable by [Shyft]." (*Id.*) Additionally, the parties agreed that termination would not limit Shyft's "liability for fees incurred on or prior to the effective date of termination and all late charges thereon." (*Id.*)

14. On October 31, 2018, Shyft provided written notice of termination of the Agreement to Element. Accordingly, the Agreement was terminated as of January 31, 2019.

**B.     Element's Performance Under and Shyft's Breach of the Agreement**

15. Between June 1, 2017 and January 31, 2019—the effective term of the Agreement—Element complied with and performed all its obligations under the Agreement.

16. During the effective term of the Agreement, Element brought substantial upfitting business to Shyft. This business included the introduction to Shyft of new customers, the movement of work to Shyft from other upfitters, and an increase in the overall volume of Shyft's upfitting business from both new and existing customers.

17. In total, during the effective term of the Agreement, Element purchased and paid for approximately $29,654,220 of upfitting work and services from Shyft.

18. Shyft, however, has not paid Element any portion of the volume discount reimbursement owed under the Agreement. Shyft also has not paid any of the related late fees owed under the Agreement for failure to pay the volume discount reimbursements.

19. By failing to pay Element the volume discount reimbursements and late fees owed under the Agreement, Shyft has materially breached the Agreement, including, among other provisions, Paragraph A and Appendix A thereto.

20. Based on the reimbursement and late fee formula set forth in Appendix A to the Agreement, Element has incurred a loss of at least $1,437,408 as a result of Shyft's material breach of the Agreement.

## Count I – Breach of Contract

21. Paragraphs 1 through 20 are incorporated by reference as if set forth in full herein.

22. Shyft has materially breached its obligations to Element under the Agreement by failing to pay Element both volume discount reimbursements and late fees owed.

23. On June 1, 2017, Element and Shyft entered into the Agreement, a valid and binding contract.

24. The Agreement required Shyft to pay volume discount reimbursements and late fees in the amounts set forth in Appendix A to the Agreement.

25. During the effective term of the Agreement, Element performed all its obligation under the Agreement and purchased and paid for approximately $29,654,220 of upfitting work and services from Shyft.

26. Shyft has not paid any volume discount reimbursements or late fees as required under the Agreement, and thus has materially breached the Agreement.

27. As a result of Shyft's breaches, Element has suffered financial harm and damages totaling at least $1,437,408.

## **Prayer for Relief**

WHEREFORE, Element respectfully requests that the Court enter judgment in its favor and against Shyft and award Element the following relief:

(a) Actual damages caused by Shyft's breach of contract;

(b) Pre-judgment and post-judgment interest;

(c) Costs of this proceeding and reasonable attorneys' fees; and

(d) All other relief as may be necessary and proper.

Respectfully submitted,

/s/ Strider L. Dickson
Strider L. Dickson, Bar No. 27157
McAllister, DeTar, Showalter & Walker LLC
706 Giddings Avenue
Suite 305
Annapolis, Maryland 21401
Telephone: 410-934-3900
Facsimile: 410-934-3933
sdickson@mdswlaw.com

*Attorney for Element*